UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-196 (PJS/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) **GOVERNMENT'S TRIAL BRIEF** |
| v. | ) |
| CHARLES RANDALL SORENSEN, | ) |
| Defendant. | ) |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Michael P. McBride and Campbell Warner, Assistant United States Attorneys, submits the following trial brief.

**I.   BACKGROUND**

Defendant Charles Randall Sorensen was a successful Delta Airlines pilot earning hundreds of thousands of dollars of taxable income annually. In 2014, despite the plain warnings of his Certified Public Accountant, Sorensen decided to stop paying his taxes. Ever since, Sorensen has gone to extraordinary lengths to avoid paying taxes. He created sham religious organizations, filed numerous fraudulent returns, claimed refunds to which he is not entitled, failed to file returns, and liquidated his retirement funds to evade collection by the Internal Revenue Service (IRS). Moreover, he inundated the IRS with frivolous filings designed only to obfuscate and confuse the system.

Sorensen chose not to pay his taxes, knowing well the consequence. His accountant—who prepared his taxes from 2010-2013—told Sorensen his anti-tax

arguments were false. The IRS levied his bank accounts, assessed numerous frivolous filer penalties, and informed him of the unlawfulness of his claims. He has not consulted with or relied on the advice of an attorney. Nevertheless, Sorensen persisted in his decision to no longer pay his taxes, culminating in an outrageously false claim to a $1,491,251 estate tax refund. Indeed, Sorensen told IRS agents that he simply "doesn't like to pay income taxes" and is choosing to "protest" them by not paying.

Sorensen now faces two counts of filing a false tax return, one count of tax evasion, three counts of failing to file a tax return, and one count of making a false claim. As of his indictment, Sorensen owed the United States more than $300,000 in taxes.

### A.  Sorensen's Decision to Stop Paying Taxes.

From 2010 to 2013, Sorensen and his then-wife were well-paid Delta Airlines pilots. They jointly earned $200,000 to $300,000 annually. They used the services of CPA Paul Strot to prepare and file their tax returns. For tax years 2010, 2011, and 2012, they filed their taxes married, filing jointly. Sorensen, however, chronically under-withheld and cursed at the tax bill due with his return. Strot instructed Sorensen to withhold more from his paycheck. Instead, Sorensen withheld less, eventually claiming falsely that he was exempt from withholding altogether. Because of Sorensen's increasingly aggressive under-withholding, the couple owed $4,500 in 2010, $12,000 in 2011, and $29,251 in 2012.

In 2013, Sorensen earned nearly $250,000. Strot prepared tax returns for Watt and Sorensen as married, filing separately. When the couple met with Strot, Sorensen raised a series of anti-tax arguments, including that the IRS and income tax were "unconstitutional." Strot told Sorensen he was wrong. Strot said that Sorensen had to pay his taxes and that failing to pay taxes would lead to serious trouble for Sorensen. Sorensen replied that he planned to "protest" paying his taxes and file a lawsuit. Although Sorensen filed the correct return for 2013 and paid some of the balance due in installments over the next few months, he stopped paying in August 2014. A balance of $9,860 remained.

Sorensen's wife continued to have Strot prepare her tax returns, but Sorensen did not. True to his declaration, Sorensen never again voluntarily paid his taxes.

**B.    Sorensen's Early Tax Evasion and False 2015 and 2016 Returns.**

In 2014, Sorensen individually earned more than $375,000. Despite his generous income, Sorensen instructed Delta to stop withholding taxes from his paychecks, claiming falsely that he was exempt. The IRS stepped in. The IRS instructed Delta to continue withholding taxes, and sent Sorensen a letter informing him that his exemption claim was incorrect. When Sorensen filed his 2014 return late, he owed $115,239 in taxes but—involuntarily—withheld only $84,731.

Over the next four years, the IRS took steps to collect on Sorensen's tax debt. The IRS sent Sorensen notices of the taxes he owed. The IRS sent Sorensen notice of its intent to levy his bank accounts. Sorensen responded with fraudulent "bonds," "money orders," and other frivolous filings. At times, he simply handwrote "refusal

for cause" or "Money Order" over notices and mailed them back to the IRS or filed them in frivolous lawsuits.





When Sorensen failed to pay his tax debt, the IRS took steps to collect. Sorensen actively evaded the IRS's attempts to collect on his tax debt. In February 2016, the IRS levied Sorensen's personal bank account for the first time to pay off his remaining balance from tax year 2013. In March 2016, the IRS levied his bank

account again to collect on his outstanding balance from tax year 2014. In an effort to evade these levies, Sorensen created a sham "religious and humanitarian" non-profit called "LAWTAM." LAWTAM was not a religious or humanitarian organization; it was a sham entity created by Sorensen in order to evade taxes. Sorensen opened a business bank account in the name LAWTAM. Shortly after Sorensen created the entity, he began depositing his personal income into the LAWTAM account. Sorensen used LAWTAM and its bank accounts exclusively to receive his income and pay his personal expenses, in an attempt to shelter his assets from further IRS levies.

In 2015, Sorensen earned more than $290,000. Despite his high income, Sorensen did not file a personal income tax return. When he later did file a 2015 tax return in January 2017, it was egregiously fraudulent. On his late return, Sorensen failed to report about $70,000 of income, including $53,000 from Delta, and $18,000 from his Navy pension. He also claimed a made up "loss" of $320,972, asserting that "demanding lawful money" made his income non-taxable. Although his return was false, the IRS's refund process issued a $35,000 refund to which he was not entitled.[1] Sorensen deposited this refund check into the LAWTAM account.

In 2016, Sorensen earned more than $500,000. He filed a return in March 2017, reporting $454,483 of income. He claimed a made up "loss" of $686,508, again

---

[1] Because Congress mandates the IRS quickly turn around tax refunds and the IRS processes such a tremendous volume of returns, the initial refund system is trust-based. Taxpayers swear, under penalty of perjury, that their returns are true, and the IRS treats them as true. Unless the system already has a hold on an individual taxpayer, fraudulent tax returns like Sorensen's are not caught at this stage. They are caught later, as the system compares their returns to the data submitted by employers, banks, and investment funds.

asserting that "demanding lawful money" made his income non-taxable. His false and fraudulent return resulted in the IRS issuing a $123,370 refund to which he was not entitled. Sorensen deposited this refund check into the LAWTAM account, too.

**C.     Sorensen's Civil Audit, Frivolous Claims, and Evasion of Collection**.

In June 2017, the IRS flagged Sorensen's fraudulent 2015 and 2016 returns and initiated a civil audit. IRS Tax Examiner Jonna Love examined Sorensen's returns and determined they failed to report income, claimed false losses, and resulted in refunds to which Sorensen was not entitled. Love sent Sorensen letters explaining the problems with his returns. The letters notified him that he owed taxes and warned him he would be assessed a penalty if he did not correct his returns.

Sorensen did not correct his returns or pay his tax bill. Rather, he replied with frivolous letters and by scrawling fake "money orders" over top of IRS correspondence. Although he was already in possession of ill-gotten refunds from his false 2015 and 2016 returns and had been warned of further penalties for frivolous filings, Sorensen nevertheless submitted additional false tax returns and amended returns seeking additional refunds for tax years 2015 and 2016.

After Sorensen failed to correct his 2015 and 2016 returns, and failed to pay his tax bill, the IRS assigned a Revenue Officer to collect Sorensen's tax debt. The Revenue Officer identified Sorensen's real property and personal bank accounts. He sent Sorensen notices of his tax debt, tax liens, and impending levies. Sorensen evaded these attempts to collect in several ways. First, he filed myriad frivolous documents with the IRS challenging its authority to assess and collect income taxes.

He sent the correspondence typical of those who defy the IRS—affidavits claiming he was not a US citizen or subject to the laws of the United States, letters insisting the matter is governed by the Uniform Commercial Code, and correspondence challenging the IRS's authority to collect income taxes.

Second, he moved his money from individual accounts subject to levy, into accounts held by sham religious non-profits. For example, on July 17, 2017, the Revenue Officer left notices of Sorensen's 2015 and 2016 tax bills on Sorensen's front door, showing he owed more than $300,000. That day, and again two days later, Sorensen moved all but $600 out of his personal accounts and into the LAWTAM account. Thereafter, he stopped using his personal accounts and began using the LAWTAM account for his personal needs. The IRS found the LAWTAM account. In October 2017, the IRS levied it and obtained $55,000 from the LAWTAM account. In response, Sorensen never again used the LAWTAM account beyond maintaining a minimum balance.

Third, he liquidated his investments and retirement accounts, moving the money into crypto-currencies.

This pattern—the IRS identifying sources of Sorensen's money, levying them, and Sorensen moving the money away—repeated itself over the next four years. All while he continued to inundate the IRS with frivolous filings resulting in further penalties.

**D.      Sorensen Stopped Filing Tax Returns and Made False Claim**

In 2017, Sorensen made More than $300,000 in taxable income. In 2018, he made about $102,000 in taxable income. And in 2019, he made about $69,000 in taxable income. He did not file a return in any of these years. Instead, he mailed the IRS two handwritten letters that purported to be his 2018 and 2019 returns, which, even if they had been real returns, falsely reported his income:

> Oct 15, 2017
>
> To Whom it May Concern,
>
> This is my 2017 Income Tax Return. I'm reporting that I made about $33,000 in pension income for 2017.
>
> If I am entitled to a refund, mail to my address below. If I owe more money let me know by writing to the below address
>
> thank you.
>
> ucc -1-308
> Address:    Respectfully,
> 3945 W 44th ST
> Minneapolis, Minnesota by: Charles Randell Sorensen
>                          Charles Randall Sorensen

> Oct 15, 2019
>
> To Whom it may concern,
>
> This is my 2018 Income Tax Return. I am reporting that I made about $33,000 in pension income for 2018.
>
> If I owe more money than what has already been withheld, please send me a statement to the below address.
>
> ucc 1-308
> Respectfully,
> by: Charles Randell Sorensen
> Charles-Randell: Sorensen

Sorensen did not send even a handwritten note for his personal 2019 income. Instead, he submitted a brazenly false return in the name of the "Estate of Charles R. Sorensen," claiming that he was entitled to a $1.4 million tax refund. When confronted later by IRS Criminal Investigators, Sorensen admitted the numbers he used in this claim were entirely made up. He further admitted lawyers and tax professionals would "shoot holes" through the frivolous argument on which his claim was based.

Sorensen continues to evade collection to this day and has not filed a correct return since 2014. In all, the IRS calculates that Sorensen evaded paying more than $300,000 in taxes between 2015 and 2021.

## II.  THE CHARGES

Sorensen is charged with two counts of filing a false return in violation of 26 U.S.C. § 7206(1). Count One charges Sorensen for his false 2015 return. Count Two charges him for his false 2016 return. Count Three charges Sorensen with attempting to evade and defeat the payment of income tax for the years 2015 and 2016 in violation of 26 U.S.C. § 7201. Counts Four through Six charge Sorensen with failing to file a tax return for years 2017, 2018, and 2019 in violation of 26 U.S.C. § 7203. Count Seven charges Sorensen with making a false claim for claiming the $1,491,251 tax refund in the name of the "Estate of Charles R. Sorensen."

## III.  THE GOVERNMENT'S EVIDENCE

The government will demonstrate Sorensen's fraudulent returns, evasion, failure to file returns, and making a false claim using several types of evidence. First, the government will present testimony from Sorensen's CPA, Paul Strot, that from

2010 to 2013, Sorensen filed correct tax returns, but did not like paying taxes. Further, in 2013, Strot informed Sorensen that his anti-tax arguments were incorrect, but Sorensen declared his intent to "protest" paying his taxes. The government will present evidence that Sorensen filed returns in 2015 and 2016 that underreported his income and claimed false "losses." The government will present documents from the IRS, Delta, the Defense Finance Accounting Service (DFAS), and Sorensen's investment accounts showing his substantial income in 2015 and 2016.

Second, the government will present testimony from IRS employees. These include Jonna Love, the IRS Tax Examiner who first reviewed Sorensen's 2015 and 2016 returns, and Anna Johnson, the IRS Revenue Agent who analyzed Sorensen's 2017, 2018, and 2019 taxes. Love will testify regarding her calculations of Sorensen's 2015 and 2016 tax debt and his frivolous correspondence that resulted in frivolous filer penalties. Retired IRS Revenue Officer Bart Brellenthin will testify regarding his attempts to collect on Sorensen's tax debt, and the extraordinary efforts Sorensen took to hide his income from the IRS and evade the IRS's attempts to collect. And Johnson will testify regarding Sorensen's taxes owed for 2017, 2018, and 2019.

Third, the government intends to present evidence of Sorensen's active evasion of payment of his tax debt from 2017-2021. This will include records showing Sorensen creating fake religious non-profits, "LAWTAM" and "LAMP," and bank records showing Sorensen moved his money out of personal bank accounts and into accounts for these fake entities. It will also include records showing Sorensen liquidating his investment accounts and moving the money into crypto-currencies.

The government hopes to enter into stipulations as to the authenticity and foundation for certain business and public records, including bank records. In the absence of stipulations, the government intends to introduce certified copies of certain records as self-authenticating documents pursuant to Rules 902(11) and 902(4) of the Federal Rules of Evidence.

Fourth, the Government will present evidence that Sorensen earned substantial income in 2017, 2018, and 2019 but failed to file returns. This evidence will consist of records from the IRS, Delta, DFAS, and Sorensen's investment accounts. It will also include Sorensen's handwritten letters to the IRS "reporting" his income, and other frivolous correspondence, including his false claim for a $1,491,251 estate tax refund.

Because this case involves such voluminous documentary evidence, the government intends to offer summary charts into evidence to assist the jury. Summary charts are properly admitted when (1) the charts fairly summarize voluminous trial evidence, (2) they assist the jury in understanding testimony already introduced, and (3) the witness who prepared the charts is subject to cross-examination with all documents used to prepare the summaries. *United States v. Spires*, 628 F.3d 1049, 1052-53 (8th Cir. 2011) (citing Fed. R. Evid. 1006); *see also United States v. Boesen*, 541 F.3d 838, 848 (8th Cir. 2008) (holding charts summarizing clinic's revenue stream were properly admitted into evidence in health care fraud trial). "Also, summaries may include assumptions and conclusions so long

as they are 'based upon evidence in the record.'" *Spires*, 628 F.3d at 1053 (citation omitted).

Additionally, much of this evidence will take the form of correspondence between Sorensen and the IRS. The correspondence from defendant will be admitted as the statement of a party-opponent pursuant to Rule 801(b)(2). The correspondence from the IRS to defendant will be introduced not for the truth of the matter asserted, but rather for the non-hearsay purpose of showing that defendant had notice of his legal obligation to pay income taxes and knowledge of the frivolous nature of his anti-tax claims. *See, e.g.*, *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 974 (C.D. Cal. 2006) (holding emails "admissible to show knowledge and state of mind"); *United States v. Jin*, 833 F. Supp. 2d 957, 968-69 (N.D. Ill. 2011) (holding emails admissible for non-hearsay purpose of showing defendant's knowledge and notice).

Fifth, the government intends to introduce evidence obtained during the execution of federal search warrants on Sorensen's home. During the search, the government found records showing Sorensen set up the LAWTAM non-profit for the purpose of evading income taxes. The government also intends to introduce items showing Sorensen's willfulness and fraudulent intent, including the IRS publications, "The Truth About Frivolous Tax Arguments," and "Tax Crimes Handbook," and guides for avoiding criminal prosecution for tax evasion, such as "Report on Defending our Tax Exempt Wages."

Finally, the government intends to call law enforcement agents to testify as summary witnesses in its case-in-chief. "The testimony of a summary witness may be received so long as she bases her summary on evidence received in the case and is available for cross-examination." *United States v. Ellefsen*, 655 F.3d 769, 780 (8th Cir. 2011) (quoting *United States v. King*, 616 F.2d 1034, 1041 (8th Cir. 1980) (permitting IRS Revenue Agent to testify as summary witness that management fees at issue in tax evasion case constituted constructive dividends)).

Dated: January 10, 2024

                                              Respectfully Submitted,

                                              ANDREW M. LUGER
                                              United States Attorney

                            BY:   /s/ *Michael P. McBride*
                                              MICHAEL P. McBRIDE
                                              CAMPBELL WARNER
                                              Assistant U.S. Attorneys