UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES RANDALL SORENSEN,<br><br>Defendant. | Case No. 21-CR-0196(1) (PJS/TNL)<br><br>ORDER |

Defendant Charles Sorensen spent years evading his tax obligations and hiding assets from the government. Beginning in or around 2017, the Internal Revenue Service ("IRS") began garnishing $2,400 per month from his pension to collect his delinquent taxes.[1] ECF No. 201 ¶ 4. Undeterred, Sorensen persisted in refusing to pay taxes and, in 2020, he filed a fraudulent claim seeking a nearly $1.5 million *refund* to which he knew he was not entitled. ECF No. 1 ¶ 9; ECF No. 137 at 3.

Sorensen was indicted in 2021 and eventually convicted by a jury of seven tax-related charges. ECF Nos. 1, 137. The Court sentenced Sorensen to 41 months in prison and imposed a restitution obligation in favor of the IRS in the amount of $370,471. ECF

[1]Sorensen has given conflicting accounts of the amount of the monthly garnishment. *See, e.g.*, ECF No. 201 ¶ 4 ($2,400); ECF No. 217 ¶ 4 ($4,400); *id.* ¶ 5 ($3,400); ECF No. 218 at 5 ($3,400); *id.* at 6 ($2,400); *id.* at 19 (first $3,400, then $2,400). For purposes of this order, these discrepancies are immaterial. Whatever the correct amount of the garnishment, Sorensen's challenges to it in this forum are without merit.

No. 163. Under the Court's restitution order, Sorensen must begin paying $250 per month after he is released from prison. *Id.* According to the Bureau of Prisons ("BOP"), Sorensen is scheduled to be released from BOP custody on November 3, 2026.[2]

This matter is before the Court on Sorensen's (1) motion for compassionate release under 18 U.S.C. 3582(c)(1)(A), and (2) motions challenging the IRS's garnishment of his pension, which, in Sorensen's view, conflicts with this Court's restitution payment plan.[3] For the reasons that follow, the motions are denied.

*A. Compassionate Release*

Under 18 U.S.C. § 3582(c)(1)(A)(i), a court may reduce a defendant's term of imprisonment if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the court finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Before filing such a motion, however, a defendant must first meet the exhaustion requirement of § 3582(c)(1)(A). *See id.* (permitting a defendant to move for compassionate release only after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a

---

[2]*See* Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/.

[3]Sorensen also moves for judgment in his favor on his restitution-related motions on the ground that the government failed to file a timely response in accordance with D. Minn. L.R. 7.1(c). *See* ECF No. 212. Rule 7.1 governs civil motion practice and does not apply to this case.

motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier").

Sorensen claims that he submitted a written request for compassionate release to the warden of his facility. ECF No. 203 ¶ 4. But the government asserts that, in response to the government's inquiry, the BOP was unable to locate any record of such a request. Sorensen dismisses the BOP's inability to locate a record as an example of BOP dysfunction. The Court has, however, ruled on dozens of compassionate-release motions over the years, and defendants filing those motions have had little trouble offering evidence that they have met the exhaustion requirement. Moreover, as the government points out, Sorensen has a long history of lies and deception, including fabricating quotations of judicial decisions in the very papers now before the Court. *See, e.g.*, ECF No. 228 at 15 (Sorensen's reply brief setting forth fictitious quotes purportedly from *United States v. Rodd*, 966 F.3d 740 (8th Cir. 2020), and *United States v. Loggins*, 966 F.3d 891 (8th Cir. 2020)); *see also infra* n.3.

The Court need not resolve this issue, however, because even assuming that Sorensen has met the exhaustion requirement, his motion fails on the merits. Sorensen contends that he suffers from serious medical conditions, including chronic atrial fibrillation, severe peripheral neuropathy, and hearing loss, which the BOP is failing to

treat. He also points to his age as well as his good conduct while in prison, his strong release plan, and his statistically low risk of recidivism.

The government has submitted copies of Sorensen's medical records, which reflect that Sorensen has been receiving regular medical care. Sorensen contends that he should be getting a higher level of care, but this sort of disagreement, in the absence of evidence that Sorensen's health is actually at serious risk, is neither extraordinary nor compelling. Sorensen emphasizes staffing shortages and other systemic problems at the BOP, but again, Sorensen must identify some way in which these issues are having an impact on him. *See United States v. Carroll*, No. CR 20-16 (JEB), 2025 WL 2061669, at *3 (D.D.C. July 23, 2025) (rejecting a compassionate-release motion based on a broad challenge to the BOP's ability to provide healthcare because "§ 3582(c)(1)(A) requires a nexus between Carroll's health and FMC Devens's ability to manage his care"). Morever, Sorensen is no longer housed at FCI Forrest City—the facility whose medical care he contends is deficient—but rather resides at a residential reentry center.

As to the other factors that Sorensen cites, none of them constitute extraordinary and compelling reasons for release. At the time of his sentencing, Sorensen was nearly 73; under the circumstances, the fact that he is now 75 is neither extraordinary nor compelling. With respect to his risk of recidivism, as the government points out, Sorensen began committing his crimes as he neared retirement, so general statistics

about low recidivism rates among older defendants do not provide reliable evidence of Sorensen's likelihood to reoffend. Although good conduct while in prison is commendable, and having a strong release plan is a good first step, neither of these circumstances constitute an extraordinary or compelling basis for release. *See United States v. Logan*, 532 F. Supp. 3d 725, 739 (D. Minn. 2021) (explaining that "rehabilitation is supposed to be the rule, not the exception").

Finally, even if Sorensen had established extraordinary and compelling reasons, the Court would deny Sorensen's motion on the basis of the applicable § 3553(a) factors. The Court sentenced Sorensen to 41 months in prison, which was the bottom of the Guidelines range. A sentence lower than 41 months would not, in the Court's view, adequately deter criminal conduct, nor reflect the seriousness of Sorensen's offense, nor promote respect for the law and provide for just punishment. *See* 18 U.S.C. § 3553(a)(2).

As the Court explained at Sorensen's sentencing, Sorensen spent the better part of a decade knowingly flouting this Nation's tax laws. Not only did he fail to pay taxes that he owed, he tried to steal almost $1.5 million from the government by making a claim for a refund to which he knew he was not entitled. He also went to great lengths to hide his assets from the government and refused to cooperate in civil-enforcement efforts, despite the fact that he earned a generous salary during his career as an airline pilot—and a generous pension following retirement—and easily could have paid his

taxes and avoided prison. He remained unrepentant at sentencing, and the Court sees little evidence that he has become repentant since he was sentenced. To the contrary, as noted, his filings are full of made-up quotations of judicial decisions. *See supra* at 3; *infra* n.3. Sorensen's brazen and repeated misrepresentations to the Court, in a case in which he was convicted of lying to the IRS for financial gain, do not inspire confidence that he is rehabilitated.

Sorensen's motion for compassionate release is denied.

### *B. Restitution*

Sorensen next moves for the Court to enjoin the IRS's collection activity as inconsistent with the Court's restitution order, mandate an accounting from the IRS, order that all amounts collected by the IRS be applied to his restitution obligation, and direct that all future IRS garnishments be remitted to the Clerk of Court for the District of Minnesota.

Sorensen is laboring under several mistaken assumptions, including that the Court's restitution order trumps the IRS's independent statutory authority to collect delinquent taxes; that the order also vests the Court with wide-ranging authority to oversee the IRS's preexisting levy on Sorensen's income; and that the money that the IRS garnishes from his income constitutes the restitution ordered by this Court as opposed to collection of Sorensen's delinquent taxes. Sorensen is wrong on all counts.

Although Sorensen cites a plethora of authorities, none of them come close to supporting these assumptions, and most of them range from irrelevant to fictitious.[4]

---

[4]Sorensen's voluminous filings are replete with fake quotations, blatantly false assertions about the substance of various cited authorities, and even the occasional fictitious case. *See, e.g.*, ECF No. 197 at 4 (citing *United States v. Hicks*, 389 F.3d 514 (5th Cir. 2004), a case involving the unlawful possession of a firearm in which there is no discussion of restitution or taxes, for the purported principle that IRS garnishment inconsistent with court-ordered restitution may be enjoined); ECF No. 199 at 9–10, 29, 76 (misrepresenting the substance of *Hicks* and quoting nonexistent language purportedly from the *Hicks* opinion); ECF No. 218 at 12, 21 (again misrepresenting *Hicks*); ECF No. 212 at 3 (quoting nonexistent "waiver" language purportedly from D. Minn. L.R. 7.1); ECF No. 199 at 8 (quoting nonexistent language purportedly from 18 U.S.C. § 3612(f)); *id.* at 9 (quoting nonexistent language purportedly from *United States v. Booth*, 309 F.3d 566 (9th Cir. 2002)); *id.* at 10 (quoting nonexistent language concerning "injustice" purportedly from Fed. R. Crim. P. 57(b)); *id.* at 11, 14 (quoting nonexistent language purportedly from *United States v. Malewicka*, 664 F.3d 1099 (7th Cir. 2011)); *id.* at 18 (quoting nonexistent language purportedly from *Miller v. United States*, 66 F.3d 220 (9th Cir. 1995)); *id.* at 21 (quoting nonexistent language purportedly from *Degen v. United States*, 517 U.S. 820 (1996)); *id.* at 22 (citing *United States v. Barrentine*, 591 F.3d 1069 (9th Cir. 2010), which does not exist); *id.* at 24 (quoting nonexistent language purportedly from *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223 (1975)); *id.* at 29, 75 (misrepresenting the holding of and quoting nonexistent language purportedly from *United States v. Chalupnik*, 514 F.3d 748 (8th Cir. 2008)); *id.* at 36 (quoting nonexistent language purportedly from *United States v. Trotter*, 270 F.3d 1150 (7th Cir. 2001)); *id.* at 37, 73 (misrepresenting the holding of and quoting nonexistent language purportedly from *United States v. Jaramillo*, 42 F.3d 920 (5th Cir. 1995)); *id.* at 41, 74 (misrepresenting the holding of and quoting nonexistent language purportedly from *United States v. Arutunoff*, 1 F.3d 1112 (10th Cir. 1993)); *id.* at 47 (quoting nonexistent language purportedly from a U.S. Sentencing Commission report); *id.* at 50 (quoting nonexistent language purportedly from *Gelco Corp. v. Coniston Partners*, 811 F.2d 414 (8th Cir. 1987)); *id.* at 55 (quoting nonexistent language purportedly from *Commodity Futures Trading Comm'n v. Co Petro Mktg. Grp.*, 680 F.2d 573 (9th Cir. 1982)); *id.* at 56 (quoting nonexistent language purportedly from *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531 (1987)); ECF No. 218 at 13, 23 (quoting nonexistent language purportedly from 18 U.S.C. § 3612(c) and (d)); *id.* at 13 (citing nonexistent "installment" language

(continued...)

The many statutes governing criminal restitution that Sorensen cites are irrelevant because the IRS is not collecting criminal restitution pursuant to this Court's judgment; it is exercising its own separate civil collection authority to recover delinquent taxes—authority that it has been exercising since long before Sorensen was even indicted. *See Seminole Nursing Home, Inc. v. Commissioner*, 12 F.4th 1150, 1154 (10th Cir. 2021) (noting the IRS's "powerful toolkit" to enforce the payment of taxes). Nothing cited in any of Sorensen's extensive filings establishes that a criminal restitution order limits the IRS's independent statutory authority to collect delinquent taxes through levy.

The closest Sorensen comes to citing pertinent authority is *United States v. Tucker*, 217 F.3d 960 (8th Cir. 2000). In *Tucker*, the Eighth Circuit reversed a restitution order and remanded for resentencing because the government had failed to submit any

---

[4](...continued)
purportedly from 18 U.S.C. § 3664(k)); ECF No. 218 at 25 (quoting nonexistent language about restitution and coordination with criminal judgments purportedly from an IRS manual). The foregoing is not a comprehensive list.

Wading through hundreds of pages of fake quotes and irrelevant authority is a significant waste of judicial resources. Notably, Sorensen continued to submit fake quotes even after the government pointed out problems with his citations. *See supra* at 3 (discussing ECF No. 228). The Court puts Sorensen on notice that further submission of fake quotations, fictitious cases, or egregiously miscited authority, will result in the summary denial of any motion that relies on such "authority" and possibly monetary sanctions—which Sorensen will have to pay in addition to his back taxes and restitution.

evidence of tax loss. *Id.* at 961. As an aside, the court noted that, "[o]f course, any amounts paid to the IRS as restitution must be deducted from any civil judgment IRS obtains to collect the same tax deficiency." *Id.* at 962. This language does not, as Sorensen seems to believe, vest this Court with any authority over the IRS's collection efforts. To the contrary: *Tucker* states that restitution payments are to be credited against what the taxpayer owes to the IRS, not (as Sorensen would have it) that tax payments made to the IRS are to be credited against a defendant's restitution obligation. To the extent that anything about how this process is supposed to work can be gleaned from *Tucker's* passing remark, the most natural reading is that the IRS, as the agency with primary responsibility for collecting taxes—and to whom Sorensen's restitution payments are forwarded—would be responsible for conducting this accounting.

Sorensen also complains that the IRS's levy is procedurally and substantively defective in various ways. For example, he contends that the IRS never provided a copy of the notice of levy or other legal authority for the garnishment; that the amount that is being garnished exceeds allowable legal limits; that the IRS has refused to provide him with an accounting of how much he has paid; and that, pursuant to 26 U.S.C. § 6343, the IRS should release or modify the levy because it is causing him economic hardship. Whether or not Sorensen's claims have any merit, Sorensen must seek a remedy

elsewhere; this long-concluded criminal case is not the proper forum for him to litigate civil grievances against the IRS.

Finally, Sorensen does not appear to be asking the Court to modify the monthly $250 payment required under the Court's restitution order. To the extent he may be seeking such a remedy, however, his request is denied. Sorensen claims that he has a monthly pension income of approximately $3,000. ECF No. 197 ¶ 10. But Sorensen's PSR states that his total monthly income (from Social Security, pensions, and annuities) is $7,600. PSR ¶ 67. Sorensen did not raise any objection to this information (nor did he argue that the then-existing IRS garnishment hampered his ability to make restitution payments). At sentencing, the Court adopted, as its own findings, all factual statements in the PSR to which there had been no objection. To the extent Sorensen may be asking this Court to modify his restitution order, therefore, the Court declines to do so, as Sorensen has not shown that his financial circumstances have changed. *See* 18 U.S.C. § 3664(k).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's motion for compassionate release [ECF No. 203] is DENIED.

2. Defendant's motions to enforce court-ordered restitution [ECF Nos. 193, 197, 198, 212, 213] are DENIED.

3. All other pending motions are DENIED AS MOOT.

4. Defendant is hereby warned that further submission of fake quotations, fictitious cases, or egregiously miscited authority will result in the summary denial of any motion that relies on such material and may also result in monetary sanctions.

Dated: September 30, 2026

/s/ Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge